

David L. Bissett
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DONALD G. BEAUMIER, JR., and | ) | |
| ARIELLE S. BEAUMIER, | ) | |
| | ) | Case No. 24-bk-00451 |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| DONALD G. BEAUMIER, JR., and | ) | |
| ARIELLE S. BEAUMIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 25-ap-00018 |
| | ) | |
| KATHI RALEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a motion for summary judgment.  Donald G. Beaumier, Jr., and Arielle S. Beaumier (the "Plaintiffs") seek judgment against Kathy Raley (the "Defendant") for alleged willful violation of the automatic stay under 11 U.S.C. § 362(a) and (k) and alleged violation of the discharge injunction under 11 U.S.C. § 524.  Specifically, the Plaintiffs contend that the Defendant had actual knowledge of the Plaintiffs' bankruptcy filing, the existence of the automatic stay, and the Plaintiffs' subsequent discharge.  Despite this knowledge, the Plaintiffs contend the Defendant maintained an alleged hold on lease proceeds owed to the Plaintiffs by Antero Resources Corporation ("Antero") through her pre-petition filing of an application for charging order.  In opposition, the Defendant argues that the Plaintiffs fail to establish a legal basis for the allegation that the Defendant has a hold or restraint on proceeds that may be due to them

from Antero. On the contrary, the Defendant contends that she did not have a hold or restraint on the proceeds and did not exercise any control over the proceeds to constitute injury.

For the reasons stated herein, the Court will deny the Plaintiffs' Motion for Summary Judgment and grant summary judgment in favor of the Defendant.

## I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden. *Id*. at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material, thereby precluding summary judgment, only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "'the record as a whole could not lead a rational trier of fact to find for the non-movant.'" *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.   BACKGROUND

On December 1, 2019, the Defendant entered a construction contract with Beaumier's Design & Remodeling, LLC.  Following a breakdown in the parties' working relationship, the Defendant filed suit against the Plaintiffs and the Plaintiffs' LLC in the Superior Court of Yavapai County, Arizona.  On July 20, 2023, the Defendant obtained default judgment, jointly and severally, against the Plaintiff and the Plaintiffs' LLC, in the amount of $853,353.38, plus interest accruing at the rate of 9.25% per annum from the date of entry.  On July 17, 2024, the Defendant recorded her judgment with the Clerk of the County Commission of Tyler County, West Virginia.  Thereafter, on August 21, 2024, the Defendant filed an Application for Charging Order to Enforce Foreign Judgment with the Circuit Court of Tyler County, West Virginia, seeking the Court to order proceeds from the Plaintiffs' oil and gas lease with Antero be paid to the Defendant up to and including the amount of the Defendant's judgment.  The record indicates the existence of the application only but not an order approving the application.  However, Antero retained the lease proceeds upon receiving notice of the application.

On August 30, 2024, the Plaintiffs filed for Chapter 7 bankruptcy.  On January 26, 2025, the Plaintiffs received an order of discharge.  On June 18, 2025, following two attempts to obtain release of the funds from Antero to the Plaintiffs, the Plaintiffs' counsel sent an email to the Defendant's counsel to provide notice that the Plaintiffs intended to file a complaint against Antero to compel transfer of the lease proceeds being held and against the Defendant for alleged violations of the automatic stay and the discharge injunction.  Upon no response, on July 9, 2025, the Plaintiffs initiated this adversary proceeding through their Complaint against Antero and the Defendant alleging willful violation of the automatic stay under 11 U.S.C. § 362(a) and (k) and violation of the discharge injunction pursuant to 11 U.S.C. § 524.[1]  On September 18, 2025, the Court entered a Stipulation and Agreed Order between the Plaintiffs and Antero dismissing it as a party Defendant, requiring production of certain documents pertaining to communications

---

[1] There are two other adversary proceedings that were filed in relation to the bankruptcy.  The first was filed on October 25, 2024, by the Plaintiffs against the Defendant seeking a declaration that her judgment lien was void.  *See Beaumier v. Raley (In re Beaumier)*, Adv. Proc. No.:24-ap-17.  On January 29, 2025, the Court granted the Plaintiffs' Motion for Judgment on the Pleadings and found that the Defendant's judgment lien was avoided and that the debt was considered an unsecured debt in the Plaintiffs' bankruptcy proceeding.  The second was filed on December 3, 2024, by the Defendant against the Plaintiffs seeking an exception of discharge.  *See Raley v. Beaumier (In re Beaumier)*, Adv. Proc. No.:24-ap-18.  On April 23, 2025, the Court dismissed the Defendant's adversary proceeding; however, following appeal, the United States District Court for the Northern District of West Virginia vacated the order of dismissal and remanded the matter for further proceedings.  This matter is currently in the discovery phase.

between Antero and the Defendant and to data reflecting revenue attributable to the Plaintiffs' royalty interest, requiring Antero to deposit with the Clerk of Court any royalties being held in suspense, and requiring Antero to deposit with the Clerk of Court any subsequent royalties that become due and payable to the Plaintiffs.

### III.    DISCUSSION

The Plaintiffs filed the pending Motion for Summary Judgment asserting that no genuine issue of material fact exists regarding the Defendant's violations of the automatic stay under 11 U.S.C. § 362(a) and (k) and violations of the discharge injunction under 11 U.S.C. § 524.  The Plaintiffs contend the Defendant had actual knowledge of the Plaintiffs' bankruptcy filing, the automatic stay, and the subsequent discharge, yet the Defendant maintained a pre-petition, judgment lien hold on lease proceeds owed to the Plaintiffs by Antero.  The Defendant opposes the Motion for Summary Judgment, requesting dismissal of the complaint, arguing the Plaintiffs fail to establish that they are entitled to any relief as a matter of law without evidence of actual influence from the Defendant upon Antero or evidence of an actual hold or restraint on the proceeds.  The dispositive issues are whether the mere prepetition filing of an application for a charging order, without the entry of a charging order or some other affirmative action, creates a restraint on property sufficient to implicate 11 U.S.C. § 362, and if so, whether the Defendant had an affirmative duty to withdraw the application.

### A.  AUTOMATIC STAY

The automatic stay goes into effect when a case is filed. 11 U.S.C. § 362(a).  The stay of any act under subsection (a) of this section continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual, the time a discharge is granted or denied.  11 U.S.C. § 362(c)(2).  The automatic stay prevents "the . . . continuation . . . of a . . . proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).  The stay also prevents the enforcement against the debtor or against property of the estate of a judgment obtained before the commencement of the bankruptcy case (§ 362(a)(2)); any act to create, perfect, or enforce against property of the debtor any lien to the extent that said lien secures a claim that arose before the commencement of the case (§ 362(a)(5)); and generally prevents any

4

act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case (§ 362(a)(6)).

While the automatic stay does protect positions of creditors, the automatic stay is designed primarily to protect the debtor and preserve estate property while the bankruptcy case proceeds. The purpose of the automatic stay "is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *see also Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983) (stating that the automatic stay "'stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'") (citation omitted). When a creditor willfully violates the automatic stay, the debtor has a cause of action for actual damages, costs, attorney fees, and in appropriate circumstances, punitive damages. 11 U.S.C. § 362(k). A "willful" violation of the automatic stay occurs when "'the creditor acts deliberately with knowledge of the bankruptcy petition.'" *Robb v. Nat'l Tree Co. (In re Robb)*, 399 B.R. 171, 175 (Bankr. N.D.W. Va. 2008) (citation omitted).

The Plaintiffs rely on the contention that the Court in the *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021), left undisturbed a litany of cases holding that other subsections of 11 U.S.C. § 362(a) include an affirmative duty on the creditor such that a creditor's failure to act would qualify as a violation of the stay. *Connor v. Prop. Fund 629, LLC (In re Connor)*, 641 B.R. 875, 883 (Bankr. M.D. Tenn. 2022). The Plaintiffs cite heavily to the Court in *In re Namen*, 649 B.R. 603 (Bankr. M.D. Fla. 2023), wherein the Court held that the creditor had an affirmative duty to act and withdraw a pre-petition writ of garnishment and to prevent a downhill snowballing of a continued garnishment. However, a writ of garnishment and an application for charging order are not sufficiently similar to warrant application of the same case law. As explained by the Court in *In re Jaffe*, 235 B.R. 490, 492 (Bankr. S.D. Fla. 1999), "[l]ike service of a writ of garnishment, an application for a charging order starts the judicial process for perfecting a lien against a partnership interest. Perfection of the lien, however, does not occur until a court actually enters a charging order. The Court has found no law to support the proposition that an application alone is sufficient to perfect such a lien."

Here, the Plaintiffs do not identify any postpetition conduct of the Defendant that would constitute a violation of the stay under § 362(a)(1), (2), (5), or (6). The Plaintiffs solely point to

the notion of a hold or restraint on lease proceeds arising from the Defendant's pre-petition judgment lien. The dispositive flaw in the Plaintiffs' argument is that the record does not establish the existence of any legal restraint on the royalty proceeds. An application for a charging order merely requests judicial relief. It does not itself create a lien, restraint, or enforcement mechanism against a debtor's property. Under applicable law whether sought under W. Va. Code § 47B-5-4 or § 31B-5-504, a charging order arises only when a court actually enters the order. Until that time, the application has no operative legal effect.[2] Without an entered charging order or other court directive, the Defendant possessed no legal authority to compel payment of the proceeds and no mechanism by which to exercise control over them. Thus, Antero's election to place the royalty proceeds in suspense upon learning of the application was a result of Antero's independent business decision and not of any enforceable process obtained by the Defendant.

Additionally, the Defendant's *application* for a charging order was filed *before* the petition date. The record is completely bare of any further steps taken by the Defendant with the state court to effectuate the application for charging order, and no such order was ever entered by the state court. The Plaintiffs' argument continues to rely on the argument that the Defendant had an affirmative duty to withdraw the prepetition application for a charging order and that failing to do so constituted a continuing violation of the stay. However, the Court finds no support for that contention. The automatic stay does not impose a duty on creditors to withdraw prepetition pleadings that have not resulted in any operative court order. The stay halts continuation of judicial proceedings and prevents further acts to collect a debt, but it does not transform a creditor's prepetition filing into a postpetition violation simply because the creditor does not affirmatively undo what was previously done. Most cases cited by the Plaintiffs entail a creditor failing to withdraw or halt garnishment efforts from enforceable garnishment orders. Here, the application for charging order had no operative effect absent judicial action. Because the state court never entered a charging order, there was no such restraint, lien, or enforcement mechanism arising from the application itself. A pleading merely requesting relief that was never granted does not itself create a restraint on property or a violation of the stay. The Defendant had no duty to mitigate or affirmatively release a hold or restraint on lease proceeds because no such hold or restraint existed.

---

[2] The Plaintiffs recognize this in their Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment. *See* Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment at 2, n.2 (N.D.W. Va. Mar. 23, 2026).

## B.  DISCHARGE INJUNCTION

Analogous to the automatic stay, upon entry of the discharge order, the discharge injunction of § 524(a) prevents, among other things, the "continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).  A violation of the discharge injunction is penalized by contempt of court. *See*, e.*g., ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006) ("A party who knowingly violates the discharge injunction can be held in contempt […].").  There is a two-part inquiry to determine whether a party may be held liable for civil contempt: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it.  *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (stating that to establish civil contempt, the movant must establish four elements by clear and convincing evidence: "'(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) … that the decree was in the movant's 'favor'; (3) … that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) … that [the] movant suffered harm as a result.'") (citation omitted).

The Court recognizes the nature of the pending adversary proceeding in *Raley v. Beaumier (In re Beaumier)*, Adv. Proc. No.:24-ap-18, and the dischargeability claims therein; however, the facts before the Court allow it to rule on the merits of the alleged discharge violation.  Here, there is no genuine dispute that the Defendant had knowledge of the Plaintiffs' discharge order.  The record reflects both the Defendant's participation in the related adversary proceedings and notice of the discharge order provided to the Defendant.  However, the Plaintiffs have not established by clear and convincing evidence that the Defendant violated the discharge injunction.  The Plaintiffs' theory again rests on the premise that the Defendant had an affirmative obligation to withdraw her prepetition application for a charging order and that the failure to do so constituted a violation of the discharge injunction sufficient to give rise to a claim for contempt.  For the same reasons discussed above, the Court rejects this argument.  Drawing all inferences in favor of the Defendant as the nonmovant, the uncontested facts of this case fail to establish that the Defendant's inaction in failing to affirmatively withdraw its application was an intentional act to collect on the

discharged, pre-petition debt. Namely, the Defendant filed its *application* for a charging order *prior* to the bankruptcy filing; the state court did not rule on the application; the Defendant did not make any additional efforts to effectuate her application; and there is no evidence that the Defendant demonstrated any restraint or hold on the royalties for Antero to have relied on in withholding the proceeds. Any decision by Antero to place the lease proceeds in suspense occurred independently and without direction from the Defendant. Moreover, the proceeds held by Antero have since been deposited with the Clerk of Court for the United States Bankruptcy Court for the Northern District of West Virginia for the Plaintiffs' benefit. Under these circumstances, the Plaintiffs have failed to demonstrate on summary judgment that the Defendant's inaction in failing to withdraw the application for charging order constituted an act to collect a discharged debt or otherwise violated the discharge injunction.

### C.  ENTRY OF JUDGMENT IN FAVOR OF THE DEFENDANT

Although the Plaintiffs are the moving party for summary judgment, the undisputed record demonstrates that the Defendant is entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, permits a court to grant summary judgment to a nonmoving party when the facts and legal issues have been fully developed, all parties have had a full and fair opportunity to present their evidence, and the record reveals that one party must prevail as a matter of law. Here, the material facts are not in dispute. The Defendant filed an application for a charging order prior to the bankruptcy filing. The state court did not enter a charging order. The Defendant took no postpetition action to pursue collection or enforcement of the judgment. Because the filing of a bankruptcy petition does not retroactively transform a prepetition application for relief into a stay violation and because a charging order does not exist until the application is approved and an order is entered by a court, the Plaintiffs cannot establish that the Defendant violated either the automatic stay or the discharge injunction. Accordingly, the Court concludes that summary judgment must be entered in favor of the Defendant.

### IV.    CONCLUSION

For the foregoing reasons, the Court finds it appropriate to deny the Plaintiffs' Motion for Summary Judgment and grant summary judgment in favor of the Defendant. Consistent with Fed. R. Civ. P. 58, made applicable by Fed. R. Bankr. P. 7058, the Court will enter an order stating as much.